**U.S. Department of Justice**



*United States Attorney*
*Southern District of New York*

---

*The Silvio J. Mollo Building*
*One Saint Andrew's Plaza*
*New York, New York 10007*

July 18, 2008

By Overnight Mail
The Honorable Kenneth M. Karas
United States District Judge
Southern District of New York
United States Courthouse
300 Quarropas Street, Room 533
White Plains, New York 10601

# MEMO ENDORSED

```
USDS SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: _____.
```

> Re:     United States v. Bennett
>         S4 05 Cr. 1067 (KMK)
>         Reg. No. 34968-083

Dear Judge Karas:

Pursuant to the Court's Order, dated July 8, 2008, the Government respectfully submits this letter in response to the letter from the above-referenced defendant to the Court, dated June 26, 2008.

On or about February 20, 2004, the defendant was released from incarceration for a 2001 conviction for bank fraud in the Southern District of New York. On or about July 22, 2005, the defendant was arrested on a violation of supervised release based upon his arrest and conviction for forgery charges in New Jersey. See PSR at ¶¶ 163-65. The following week, on July 28, 2005, the defendant was sentenced on the violation of supervised release principally to 8 months' imprisonment. See PSR at ¶¶ 161-63. A copy of the judgment is attached hereto as Exhibit A.

On or about September 1, 2005, the defendant was presented on a complaint charging him with criminal conduct that was ultimately reflected in Indictment S4 05 Cr. 1067 (KMK) (the "2004 Indictment"). See PSR at p.1.

On or about March 21, 2006, the defendant's 8-month sentenced on his violation of supervised release expired. At that point, his incarceration was solely incident to the charges in the 2004 Indictment.

On or about November 5, 2007, your Honor sentenced the defendant to 70 months' imprisonment on the charges contained in the 2004 Indictment to which the defendant pled guilty. A copy of the judgment is attached hereto as Exhibit B.

The Honorable Kenneth M. Karas
July 18, 2008
Page 2

As set out in the exhibit to the defendant's June 26, 2008, letter, the defendant's sentencing computation used as the beginning date November 5, 2007, the date that sentence on the charges contained in the 2004 Indictment was imposed. The exhibit further reflects that the defendant was credited with time served on his 70-month sentence with the time between March 22, 2006 (the day after his 8-month sentence on his violation of supervised release expired) through November 4, 2007 (the day that the Court imposed sentence on the charges contained in the 2004 Indictment).

This is perfectly appropriate. If the defendant's concern is that the time between July 22, 2005, and March 21, 2006, was not credited towards his 70-month sentence, then his concern is misplaced. The defendant could not have been serving a sentence on the violation of supervised release and, at the same time, earning credit towards what ultimately would be his 70-month sentence on charges contained in the 2004 Indictment. See 18 U.S.C. § 3585(b) (providing that defendant shall receive credit towards sentence of imprisonment for any time spent in official detention as a result of certain enumerated charges "that has not been credited against another sentence") (emphasis added); see, e.g., Werber v. United States, 149 F.3d 172, 173 (2d Cir. 1998) ("Instead, the BOP (properly) refused to credit Werber's pre-sentence federal detention to the federal sentence because it had already been credited to the California sentence, and because 18 U.S.C. § 3585(b) bars double-counting."); Thomas v. Craig, No. 05 Civ. 1416, 2007 WL 836870, *3 (N.D.N.Y. Mar. 15, 2007) ("under this provision prior time served that is properly credited toward another sentence may not be counted, since to find otherwise would result in a prisoner earning 'double credit' for a single period of time served") (citing Rios v. Wiley, 201 F.3d 257, 272 (3d Cir. 2000)).

The defendant's letter also raises his concern regarding his designation by the Bureau of Prisons ("BOP") to a facility located in Maryland, far from Arizona, where he claims his family resides. In the judgment, the Court recommended that the BOP designate the defendant to a location within or as near as possible to Arizona. However, one of the principal sources of information that the BOP uses to designate defendants and, in trying to place them near their families, are presentence reports. The defendant's PSR notes that, prior to his incarceration, he was living in Brooklyn and does not contain any information suggesting that any of the defendant's family lived in or near Arizona. See PSR at ¶¶ 171-80. Based on my conversation with a representative of the BOP, the Government's understanding is that the BOP did not comply with the Court's recommendation because there was no information in PSR indicating that the defendant had any connection to Arizona. Should the defendant wish to seek a transfer, he should comply with the procedures outlined in BOP's Inmate Security Designation and Custody Classification Manual (BOP Policy Statement 5100.08) (relevant chapter attached hereto as Exh. C).

The Honorable Kenneth M. Karas
July 18, 2008
Page 3

    Should the defendant object to the calculation of prior credit, then he should, before requesting an order from the Court, seek an administrative remedy within the BOP.  See 28 C.F.R. § 542.10 et seq. (setting out procedure for administrative remedies); United States v. Yousef, 327 F.3d 56, 165, 169 (2d Cir. 2003) (court lacked jurisdiction to review claims relating to conditions of confinement because defendant had not exhausted administrative remedies); United States v. Whaley, 148 F.3d 205, 207 (2d Cir. 1998) (per curiam) ("Although prisoners may seek judicial review of the BOP's sentencing determinations after exhausting their administrative remedies, the district court is without jurisdiction to compute sentencing credit if a prisoner does not challenge his sentence and has not sought administrative review.").

                  Respectfully submitted,

                  MICHAEL J. GARCIA
                  United States Attorney

By: _____
          E. Danya Perry/Daniel W. Levy
          Assistant United States Attorneys
          Telephone:  (212) 637-2434/-1062

Exhibits A-C

cc:    Toybe Bennett (by U.S. mail; w/exhs.)
       Reg. No. 34968-083
       FCI Cumberland
       Federal Correctional Institution
       P.O. Box 1000
       Cumberland, MD  21501

*The Clerk is respectfully requested to docket this Letter.*

SO ORDERED

KENNETH M. KARAS U.S.D.J.
7/29/08

# Exhibit A

CLOSED

AO 245B   (Rev. 12/03) Judgment in a Criminal Case
Sheet 1

DOC# 11

7/23/01

# UNITED STATES DISTRICT COURT

_____ Southern _____ District of _____ New York _____

| UNITED STATES OF AMERICA | **JUDGMENT IN A CRIMINAL CASE** |
|---|---|
| **V.** | |

TOYBE BENNETT

Case Number:     00 CR 1230

USM Number:     34968-083

_____ John Byrnes _____
Defendant's Attorney

## THE DEFENDANT:

X pleaded guilty to count(s)     one of the supervised release violation charges

☐ pleaded nolo contendere to count(s)
   which was accepted by the court.

☐ was found guilty on count(s)
   after a plea of not guilty.

*DOCKETED AS #01/14/12*
*A JUDGMENT*
*ON 8/5/05*

The defendant is adjudicated guilty of these offenses:

| Title & Section | Nature of Offense | Offense Ended | Count |
|---|---|---|---|
| | | | |

The defendant is sentenced as provided in pages 2 through ___3___ of this judgment. The sentence is imposed pursuant to the Sentencing Reform Act of 1984.

☐ The defendant has been found not guilty on count(s) _____

X Count(s)     2-6     ☐ is   X are   dismissed on the motion of the United States.

It is ordered that the defendant must notify the United States attorney for this district within 30 days of any change of name, residence, or mailing address until all fines, restitution, costs, and special assessments imposed by this judgment are fully paid. If ordered to pay restitution, the defendant must notify the court and United States attorney of material changes in economic circumstances.

A CERTIFIED COPY
J. MICHAEL McMAHON,     **CLERK**

BY _____
       DEPUTY CLERK

July 28, 2005
Date of Imposition of Judgment

_____
Signature of Judge

Victor Marrero, U.S.D.J.
Name and Title of Judge

July 29, 2005
Date

U.S. DISTRICT COURT
FILED
JUL 2 9 2005
S.D. OF N.Y.

AUG - 3 2005

AO 245B     (Rev. 12/03) Judgment in Criminal Case
            Sheet 2 — Imprisonment

DEFENDANT:          TOYBE BENNETT
CASE NUMBER:        00 CR 1230

Judgment — Page __2__ of __3__

# IMPRISONMENT

    The defendant is hereby committed to the custody of the United States Bureau of Prisons to be imprisoned for a total term of:

**Eight (8) months.**

☐  The court makes the following recommendations to the Bureau of Prisons:

X  The defendant is remanded to the custody of the United States Marshal.

☐  The defendant shall surrender to the United States Marshal for this district:

    ☐  at _____ ☐ a.m.   ☐ p.m.   on _____ .

    ☐  as notified by the United States Marshal.

☐  The defendant shall surrender for service of sentence at the institution designated by the Bureau of Prisons:

    ☐  before 2 p.m. on _____ .

    ☐  as notified by the United States Marshal.

    ☐  as notified by the Probation or Pretrial Services Office.

# RETURN

I have executed this judgment as follows:

Defendant delivered on _____ to _____

a _____ , with a certified copy of this judgment.

_____
UNITED STATES MARSHAL

By _____
DEPUTY UNITED STATES MARSHAL

AO 245B    (Rev. 12/03) Judgment in a Criminal Case
Sheet 3 — Supervised Release

Judgment—Page    3    of    3

DEFENDANT:        TOYBE BENNETT
CASE NUMBER:      00 CR 1230

## SUPERVISED RELEASE

Upon release from imprisonment, the defendant shall be on supervised release for a term of :

### 1 (ONE) YEAR.

The defendant must report to the probation office in the district to which the defendant is released within 72 hours of release from the custody of the Bureau of Prisons.

The defendant shall not commit another federal, state or local crime.

The defendant shall not unlawfully possess a controlled substance. The defendant shall refrain from any unlawful use of a controlled substance. The defendant shall submit to one drug test within 15 days of release from imprisonment and at least two periodic drug tests thereafter, as determined by the court.

☐    The above drug testing condition is suspended, based on the court's determination that the defendant poses a low risk of

future substance abuse. (Check, if applicable.)

X    The defendant shall not possess a firearm, ammunition, destructive device, or any other dangerous weapon. (Check, if applicable.)

☐    The defendant shall cooperate in the collection of DNA as directed by the probation officer. (Check, if applicable.)

☐    The defendant shall register with the state sex offender registration agency in the state where the defendant resides, works, or is a student, as student, as directed by the probation officer. (Check, if applicable.)

☐    The defendant shall participate in an approved program for domestic violence. (Check, if applicable.)

If this judgment imposes a fine or restitution, it is a condition of supervised release that the defendant pay in accordance with the Schedule of Payments sheet of this judgment.

The defendant must comply with the standard conditions that have been adopted by this court as well as with any additional conditions on the attached page.

## STANDARD CONDITIONS OF SUPERVISION

1)    the defendant shall not leave the judicial district without the permission of the court or probation officer;

2)    the defendant shall report to the probation officer and shall submit a truthful and complete written report within the first five days of each month;

3)    the defendant shall answer truthfully all inquiries by the probation officer and follow the instructions of the probation officer;

4)    the defendant shall support his or her dependents and meet other family responsibilities;

5)    the defendant shall work regularly at a lawful occupation, unless excused by the probation officer for schooling, training, or other acceptable reasons;

6)    the defendant shall notify the probation officer at least ten days prior to any change in residence or employment;

7)    the defendant shall refrain from excessive use of alcohol and shall not purchase, possess, use, distribute, or administer any controlled substance or any paraphernalia related to any controlled substances, except as prescribed by a physician;

8)    the defendant shall not frequent places where controlled substances are illegally sold, used, distributed, or administered;

9)    the defendant shall not associate with any persons engaged in criminal activity and shall not associate with any person convicted of a felony, unless granted permission to do so by the probation officer;

10)    the defendant shall permit a probation officer to visit him or her at any time at home or elsewhere and shall permit confiscation of any contraband observed in plain view of the probation officer;

11)    the defendant shall notify the probation officer within seventy-two hours of being arrested or questioned by a law enforcement officer;

12)    the defendant shall not enter into any agreement to act as an informer or a special agent of a law enforcement agency without the permission of the court; and

13)    as directed by the probation officer, the defendant shall notify third parties of risks that may be occasioned by the defendant's criminal record or personal history or characteristics and shall permit the probation officer to make such notifications and to confirm the defendant's compliance with such notification requirement.

**Exhibit B**

AO 245B   (Rev. 06/05) Judgment in a Criminal Case
Sheet 1

# UNITED STATES DISTRICT COURT

SOUTHERN _____ District of _____ NEW YORK

UNITED STATES OF AMERICA
**V.**
Toybe Bennett

**JUDGMENT IN A CRIMINAL CASE**

Case Number: S4 05 CR 1067

USM Number: 34968-083

Neil S. Cartusciello, Esq.
Defendant's Attorney

## THE DEFENDANT:

X pleaded guilty to count(s)        1, 12 and 15

☐ pleaded nolo contendere to count(s)
which was accepted by the court.

☐ was found guilty on count(s)
after a plea of not guilty.

The defendant is adjudicated guilty of these offenses:

| Title & Section | Nature of Offense | Offense Ended | Count |
|---|---|---|---|
| 18 USC 1349 | Conspiracy to Commit Ban Fraud | 8/2005 | 1 |
| 18 USC 1956(h) | Conspiracy to Launder Funds | 8/2005 | 12 |
| 18 USC 371 | Conspiracy to Steal Goods | 11/2004 | 15 |

The defendant is sentenced as provided in pages 2 through ___6___ of this judgment. The sentence is imposed pursuant to the Sentencing Reform Act of 1984.

☐ The defendant has been found not guilty on count(s) _____

Count(s)   2,4,5,6,13 & underlying indictments ☐ is     X are  dismissed on the motion of the United States.

It is ordered that the defendant must notify the United States attorney for this district within 30 days of any change of name, residence, or mailing address until all fines, restitution, costs, and special assessments imposed by this judgment are fully paid. If ordered to pay restitution, the defendant must notify the court and United States attorney of material changes in economic circumstances.

November 5, 2007
Date of Imposition of Judgment

Signature of Judge

Hon. Kenneth M. Karas, U.S.D.J.
Name and Title of Judge

1/31/08
Date

USDS SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: __ __
DATE FILED: _____

AO 245B    (Rev. 06/05) Judgment in Criminal Case
           Sheet 2 — Imprisonment

Judgment — Page __2__ of __6__

DEFENDANT:         Toybe Bennett
CASE NUMBER:       S4 05 CR 1067

## IMPRISONMENT

The defendant is hereby committed to the custody of the United States Bureau of Prisons to be imprisoned for a total term of:

70 months to run concurrent on Counts 1 and 12 and 60 months on Count 15 to run concurrent with Counts 1 and 12

X  The court makes the following recommendations to the Bureau of Prisons:
   The Defendant shall be designated to a facility in or nearest to Arizona

X  The defendant is remanded to the custody of the United States Marshal.

☐  The defendant shall surrender to the United States Marshal for this district:

   ☐  at _____ ☐ a.m.   ☐ p.m.   on _____ .

   ☐  as notified by the United States Marshal.

☐  The defendant shall surrender for service of sentence at the institution designated by the Bureau of Prisons:

   ☐  before 2 p.m. on _____ .

   ☐  as notified by the United States Marshal.

   ☐  as notified by the Probation or Pretrial Services Office.

## RETURN

I have executed this judgment as follows:

Defendant delivered on _____ to _____

a_____ , with a certified copy of this judgment.

_____
UNITED STATES MARSHAL

By _____
DEPUTY UNITED STATES MARSHAL

AO 245B    (Rev. 06/05) Judgment in a Criminal Case
            Sheet 3 — Supervised Release

Judgment—Page ___3___ of ___6___

DEFENDANT:        Toybe Bennett
CASE NUMBER:      S4 05 CR 1067

## SUPERVISED RELEASE

Upon release from imprisonment, the defendant shall be on supervised release for a term of :

5 years on Count 1, 3 years to run concurrent on Counts 12 and 15 for a total of 8 years

The defendant must report to the probation office in the district to which the defendant is released within 72 hours of release from the custody of the Bureau of Prisons.

The defendant shall not commit another federal, state or local crime.

The defendant shall not unlawfully possess a controlled substance. The defendant shall refrain from any unlawful use of a controlled substance. The defendant shall submit to one drug test within 15 days of release from imprisonment and at least two periodic drug tests thereafter, as determined by the court.

☐  The above drug testing condition is suspended, based on the court's determination that the defendant poses a low risk of future substance abuse. (Check, if applicable.)

X   The defendant shall not possess a firearm, ammunition, destructive device, or any other dangerous weapon. (Check, if applicable.)

X   The defendant shall cooperate in the collection of DNA as directed by the probation officer. (Check, if applicable.)

☐  The defendant shall register with the state sex offender registration agency in the state where the defendant resides, works, or is a student, as directed by the probation officer. (Check, if applicable.)

☐  The defendant shall participate in an approved program for domestic violence. (Check, if applicable.)

If this judgment imposes a fine or restitution, it is a condition of supervised release that the defendant pay in accordance with the Schedule of Payments sheet of this judgment.

The defendant must comply with the standard conditions that have been adopted by this court as well as with any additional conditions on the attached page.

## STANDARD CONDITIONS OF SUPERVISION

1)   the defendant shall not leave the judicial district without the permission of the court or probation officer;

2)   the defendant shall report to the probation officer and shall submit a truthful and complete written report within the first five days of each month;

3)   the defendant shall answer truthfully all inquiries by the probation officer and follow the instructions of the probation officer;

4)   the defendant shall support his or her dependents and meet other family responsibilities;

5)   the defendant shall work regularly at a lawful occupation, unless excused by the probation officer for schooling, training, or other acceptable reasons;

6)   the defendant shall notify the probation officer at least ten days prior to any change in residence or employment;

7)   the defendant shall refrain from excessive use of alcohol and shall not purchase, possess, use, distribute, or administer any controlled substance or any paraphernalia related to any controlled substances, except as prescribed by a physician;

8)   the defendant shall not frequent places where controlled substances are illegally sold, used, distributed, or administered;

9)   the defendant shall not associate with any persons engaged in criminal activity and shall not associate with any person convicted of a felony, unless granted permission to do so by the probation officer;

10)  the defendant shall permit a probation officer to visit him or her at any time at home or elsewhere and shall permit confiscation of any contraband observed in plain view of the probation officer;

11)  the defendant shall notify the probation officer within seventy-two hours of being arrested or questioned by a law enforcement officer;

12)  the defendant shall not enter into any agreement to act as an informer or a special agent of a law enforcement agency without the permission of the court; and

13)  as directed by the probation officer, the defendant shall notify third parties of risks that may be occasioned by the defendant's criminal record or personal history or characteristics and shall permit the probation officer to make such notifications and to confirm the defendant's compliance with such notification requirement.

AO 245B    (Rev. 06/05) Judgment in a Criminal Case
           Sheet 3A — Supervised Release

Judgment—Page ____4____ of ____6____

DEFENDANT:        Toybe Bennett
CASE NUMBER:      S4 05 CR 1067

## ADDITIONAL SUPERVISED RELEASE TERMS

The Defendant will provide the Probation Officer with access to any and all requested financial information.

The Defendant will not incur any new credit charges or open additional lines of credit without the approval of the probation officer unless the defendant is in compliance with the installment payment schedule.

It is recommended that the defendant is to be supervised by the district of residence.

Restitution will be paid in the amount of $923,840.49 at a rate of 10% of the Defendants net monthly income to begin following the Defendant's release.

Fine waived or below the guideline range because of inability to pay.

The Defendant will pay a special assessment in the amount of $300.00

AO 245B    (Rev. 06/05) Judgment in a Criminal Case
           Sheet 5 — Criminal Monetary Penalties

Judgment — Page  5       of       6

DEFENDANT:        Toybe Bennett
CASE NUMBER:      S4 05 CR 1067

## CRIMINAL MONETARY PENALTIES

The defendant must pay the total criminal monetary penalties under the schedule of payments on Sheet 6.

|  | **Assessment** | **Fine** | **Restitution** |
|---|---|---|---|
| **TOTALS** | $ 300.00 | $ | $ |

☐  The determination of restitution is deferred until _____. An *Amended Judgment in a Criminal Case* (AO 245C) will be after such determination.

X   The defendant must make restitution (including community restitution) to the following payees in the amount listed below.

If the defendant makes a partial payment, each payee shall receive an approximately proportioned payment, unless specified otherwise in the priority order or percentage payment column below. However, pursuant to 18 U.S.C. § 3664(i), all nonfederal victims must be paid before the United States is paid.

| Name of Payee | Total Loss* | Restitution Ordered | Priority or Percentage |
|---|---|---|---|
| **Wachovia Bank**<br>101 N. Independence Mall E.<br>Philadelphia, PA 19106<br>Corporate Investigations<br>Reference Case No. 11920438<br>(Via Probation) | $62,191.00 | | |
| Morgan Stanley & Co. Inc.<br>c/o Krebsbach & Snyder<br>55 Broadway<br>New York, New York 10006<br>Attn: Theodore R. Snyder<br>(Via Probation) | $775,000.00 | | |
| Commerce Bank<br>Corporate Security Admin.<br>9000 Atrium Way<br>Mt. Laurel, NJ 08054<br>Ref. Case No. 2004008974 | $86,649.49 | | |
| **TOTALS** | $ _____ $923,840.49 | $ _____ $0.00 | |

☐  Restitution amount ordered pursuant to plea agreement  $ _____

☐  The defendant must pay interest on restitution and a fine of more than $2,500, unless the restitution or fine is paid in full before the fifteenth day after the date of the judgment, pursuant to 18 U.S.C. § 3612(f). All of the payment options on Sheet 6 may be subject to penalties for delinquency and default, pursuant to 18 U.S.C. § 3612(g).

☐  The court determined that the defendant does not have the ability to pay interest and it is ordered that:

    ☐  the interest requirement is waived for the    ☐  fine    ☐  restitution.

    ☐  the interest requirement for the    ☐  fine    ☐  restitution is modified as follows:

* Findings for the total amount of losses are required under Chapters 109A, 110, 110A, and 113A of Title 18 for offenses committed on or after September 13, 1994, but before April 23, 1996.

AO 245B    (Rev. 06/05) Judgment in a Criminal Case
           Sheet 6 — Schedule of Payments

Judgment — Page ___6___ of ___6___

DEFENDANT:        Toybe Bennett
CASE NUMBER:      S4 05 CR 1067

## SCHEDULE OF PAYMENTS

Having assessed the defendant's ability to pay, payment of the total criminal monetary penalties are due as follows:

**A**  X  Lump sum payment of $ ___300.00___ due immediately, balance due

    ☐  not later than _____ , or
    ☐  in accordance  ☐ C,  ☐ D,  ☐ E, or  ☐ F below; or

**B**  ☐  Payment to begin immediately (may be combined with  ☐ C,  ☐ D, or  ☐ F below); or

**C**  ☐  Payment in equal _____ (e.g., weekly, monthly, quarterly) installments of $ _____ over a period of _____ (e.g., months or years), to commence _____ (e.g., 30 or 60 days) after the date of this judgment; or

**D**  ☐  Payment in equal _____ (e.g., weekly, monthly, quarterly) installments of $ _____ over a period of _____ (e.g., months or years), to commence _____ (e.g., 30 or 60 days) after release from imprisonment to a term of supervision; or

**E**  ☐  Payment during the term of supervised release will commence within _____ (e.g., 30 or 60 days) after release from imprisonment.  The court will set the payment plan based on an assessment of the defendant's ability to pay at that time; or

**F**  ☐  Special instructions regarding the payment of criminal monetary penalties:

Unless the court has expressly ordered otherwise, if this judgment imposes imprisonment, payment of criminal monetary penalties is due during imprisonment.  All criminal monetary penalties, except those payments made through the Federal Bureau of Prisons' Inmate Financial Responsibility Program, are made to the clerk of the court.

The defendant shall receive credit for all payments previously made toward any criminal monetary penalties imposed.

X  Joint and Several

    Defendant and Co-Defendant Names and Case Numbers (including defendant number), Total Amount, Joint and Several Amount, and corresponding payee, if appropriate.

    05CR1067, Roberto Montgomery, $86,649.49
    05CR1067, Douglas Shyne - to be determined

☐  The defendant shall pay the cost of prosecution.

☐  The defendant shall pay the following court cost(s):

☐  The defendant shall forfeit the defendant's interest in the following property to the United States:

Payments shall be applied in the following order: (1) assessment, (2) restitution principal, (3) restitution interest, (4) fine principal, (5) fine interest, (6) community restitution, (7) penalties, and (8) costs, including cost of prosecution and court costs.

# Exhibit C

P5100.08
9/12/2006
Chapter 7, Page 1

## INMATE TRANSFER

**TRANSFER PROCEDURES.**  Transfers (also known as redesignations) are used to move inmates from one institution to another as needed, with each type of transfer having a specific objective. The following are some of the more frequent reasons for a transfer:

- institution classification;
- nearer release;
- disciplinary/close supervision;
- adjustment;
- medical/psychological treatment;
- temporary transfers;
- training purposes/program participation;
- Institution Hearing Program;
- pre-release; and,
- transfers from CCC's.

After review and approval by the Unit Team, a transfer request is submitted via the Request for Transfer/Application of Management Variable (409) to the DSCC.  The procedures for completing the 409 are outlined below and may only be waived or modified with the approval of the Assistant Director, Correctional Programs Division, Washington, D.C. or his/her designee.

1.  **Inmate's Medical Status.**  Include current, complete, and accurate available information concerning any medical problem that might affect redesignation;

2.  **Institution Adjustment.**  Include a brief description of the inmate's adjustment during this period of incarceration with emphasis on recent adjustment;

3.  **Rational for Referral.**  Include a complete, specific justification and support for the requested action;

4.  **Parole Hearing Scheduled.**  Indicate whether or not the inmate is eligible for a parole hearing.  If yes, indicate the date of the hearing.  (See SALLYPORT for a current listing of parole/non-parole institutions).

5.  **Past or Present Behavior and/or Management Concerns.**  Note any past or present behavior and/or management concerns which may affect placement (i.e., history of arrests or disruptive behavior

which may not have resulted in a conviction, inmates preference regarding this request, etc.). Also note any Security Threat Group concerns/associations. In addition, it is necessary for staff to closely review each case submitted for any CIM concerns. Any CIM concerns should be noted on the 409 if applicable. However, it is not necessary for staff to route a Request for CIM Activity Clearance with each transfer request since CIM activity clearance is included in the redesignation for all CIM assignments except WITSEC cases. Redesignations between same security level institutions are discouraged, except for CIM purposes, nearer release purposes, or other unusual circumstances. Copies of all transfer requests for Disruptive Group Members will be forwarded to the Intelligence Section, Central Office, via GroupWise upon approval of the transfer. Additionally, the institution Special Investigative Supervisor should also receive a copy of the transfer request; and

6. **BP-337/BP-338 Discrepancies**. Include a brief description of any scoring changes between the BP-337 and BP-338.

Complete all required information, then route the request through normal institutional review channels for approval by the CEO. After approval by the CEO, it may be routed to the DSCC Administrator from the unit's mailbox. The Unit Team will enter the appropriate "DST" assignment (see below) into SENTRY as confirmation that a redesignation request has been submitted to the DSCC or OMDT. Enter this SENTRY assignment under the "DST" category using the "Update Inmate Assignment" transaction.

- Enter "W REDES R" if the transfer request is for a routine transfer.

- Enter "W REDES M" if the transfer request requires a review by the OMDT (Medical Designator).

Once the e-mail requesting redesignation is received, DSCC staff will at a minimum review the following SENTRY transactions to determine if the inmate is appropriate for redesignation:

CIM Clearance and Separatee Data;
Inmate Load Data;
Inmate Profile;
Custody Classification Form;
Security/Designation Data Form; and,
Chronological Disciplinary Record.

If the transfer is approved, DSCC staff will enter the information and the appropriate destination (DST) assignment in SENTRY on the "Enter Redesignation" screen and will also note the

approved institution transfer code.  The method of transportation
is at the discretion of the Warden.  Should a change in DST be
required, DSCC staff will make the change in SENTRY prior to the
inmate's arrival at the designated institution.

If the transfer is denied, DSCC staff will indicate the denial
on the "Update Inmate Remarks" screen and will also delete the
"W REDES" from SENTRY.  Unit staff should closely monitor SENTRY
for deletions of the "W REDES" transaction.

1.  **INSTITUTION CLASSIFICATION TRANSFERS**.  These transfers are
typically referred to as either "Lesser Security" (Code 308)
transfers or "Greater Security" (Code 307) transfers.

   a.  **Security Level Changes**

      (1) When a decrease in the inmate's security level is
   indicated by the Custody Classification Form, transfer of
   the inmate to a lower security level institution should be
   considered.

      (2) Likewise, an increased security level may be indicated
   in a similar fashion.  The security total may increase to a
   higher security level range.

If an updated security scoring, combined with Public Safety
Factors, indicate that an inmate is rated at a different security
level, the inmate must be referred to the DSCC for either
transfer or application of a Management Variable.  For example,
if an inmate in a Low security level institution is reclassified
to Minimum security, the case must be referred for transfer or
application of a Management Variable.  If transfer is denied,
DSCC staff will apply an appropriate Management Variable and add
a Management Security Level, if applicable.

   b.  **Custody Level Changes**.  During an inmate's custody review,
a custody level may be increased or decreased (ordinarily, only
one level at a time) indicating a transfer is appropriate.  For
example:

      (1)  A Medium security level inmate has OUT custody, and
   becomes eligible for COMMUNITY custody.  If the Unit Team
   decides to reduce custody, the inmate would normally be
   referred for redesignation to a Low or Minimum security
   level facility, since Medium security level institutions do
   not house COMMUNITY custody inmates.  If approved for
   transfer by the DSCC, the Management Variable of Lesser
   Security will be applied and the Management Security Level
   will be changed accordingly.

(2)  An inmate's transfer to a higher security institution could be triggered by an increase in custody needs.  For example, a Medium security level inmate with IN custody becomes eligible for a custody increase.  The team agrees to increase the custody to Maximum.  Since Medium security level facilities are not authorized to house Maximum custody inmates, the inmate must be referred for transfer to a High security level institution and the MSL changed in accordance with the application of an MGTV.

2.  **NEARER RELEASE TRANSFERS (Code 313)**.  Nearer release transfers move the inmate closer to their legal residence or release destination, consistent with their security level. Inmates may be considered for a nearer release transfer only after serving 18 consecutive months of clear conduct in a general population.  Nearer release transfers should be incorporated with "Lesser Security" transfers whenever possible.  Once the inmate has been transferred within 500 miles of his or her release residence, no further referrals will be made for nearer release transfer consideration.

Transfer to a facility in an area other than the inmate's legal residence or sentencing district may be considered by the inmate's Unit Team provided the inmate can provide strong evidence of community and/or family support.  Institution staff should use sound correctional judgment when reviewing such requests for transfer to ensure the transfer is consistent with guidelines established in this chapter.

Inmates with an Order for Deportation, an Order of Removal, an ICE detainer for an unadjudicated offense(s) or an ICE detainer for a hearing will not be transferred for nearer release purposes since they will be returning to the community outside, rather than inside, the United States upon release.

3.  **WITSEC TRANSFERS**.  All movement of Witness Security cases is coordinated exclusively through the Inmate Monitoring Section of the Correctional Programs Branch, Central Office.  Witness Security cases will not be transferred without authorization from that office.  Witness Security inmates who require medical or mental health treatment at a medical center must also be approved by the Medical Designator.

If the inmate is classified as a WITSEC case, a copy of the medical referral will be sent simultaneously to the Inmate Monitoring Section (IMS) and the Medical Designator.  The Inmate Monitoring Section will coordinate with the OMDT regarding an appropriate placement.  Placement will be based on available medical resources, security needs, bed space availability, and

the inmate's need for medical care.  IMS will enter activity
clearances for WITSEC cases.

4.  **DISCIPLINARY/CLOSE SUPERVISION TRANSFERS (Codes 309/323)**.  An
act(s) of documented institution misconduct may result in an
inmate's transfer to another institution, normally of greater
security, for disciplinary reasons.  Wardens may recommend same
security level transfers only when placement at a greater
security level institution is not possible or other overriding
circumstances exist.

  Disciplinary or Close Supervision transfer requests will be
sent electronically to the DSCC Administrator and contain the
following information:

    (a)  Request for Transfer/Application of Management Variable
         (must be thorough and specific);

    (b)  Close Supervision investigation report, if requested;
         and,

    (c)  Intelligence data or supporting memorandum if
         requested.

 Institution staff should carefully review the management of
309/323 cases on an individual basis, applying sound correctional
judgment that considers the safety and security of the inmate,
the institution and its staff and the community.

5.  **ADJUSTMENT TRANSFERS (Code 330)**.  All transfer referrals
submitted as Code 330 transfers for adjustment purposes will be
reviewed by the DSCC.  Adjustment purposes transfer requests will
be sent electronically to the DSCC Administrator via Form 409.
DSCC staff will ensure that the transfer does not meet the
requirements of an unverified protection transfer, Code 323.

6.  **MEDICAL AND PSYCHIATRIC TRANSFERS (Codes 331-336 and
338, 339)**.  Medical designations and transfers are approved by
the Central Office Medical Designator, Office of Medical
Designations and Transportation (OMDT).  The Central Office
Medical Designator assigns inmates to Medical Referral Centers
(MRC), institutions with medical resources, or non-Bureau
community care centers to provide needed medical services.
Medical redesignations are initiated for inmates with acute
medical, surgical, or psychiatric condition, or for those inmates
who have chronic care needs that cannot be addressed at the
parent institution.  Transfers will be classified as either (a)
Emergency, (b) Routine/Urgent, or (c) Routine.

If an inmate objects, either in writing or through his or her
attorney, to a transfer for psychiatric/mental health treatment,
the provisions of 18 U.S.C. § 4245 may apply.  Staff will suspend
transfer action in such cases and refer the matter to their
Regional Counsel for review.  The Regional Counsel will notify
the institution when the transfer action can be re-instituted.

a. **Emergency Transfer** - An emergency transfer is a medical,
surgical, or psychiatric situation determined by medical/mental
health staff that requires immediate, direct transportation.
This includes inmates not medically or psychiatrically capable of
transport via routine BOP air/surface transportation, e.g., bus,
commercial air, or USMS/Bureau airlift.  Direct transportation is
defined as air ambulance, air charter, or ground ambulance and,
in some instances, an institution vehicle may be utilized.

b. **Routine/Urgent Transfer** - A routine/urgent transfer is
initiated for medical, surgical, or psychiatric treatment that is
not an emergency, however must be transported directly to a MRC,
typically within two to three weeks of designation.

Routine urgent transfers require direct transfer to the MRC
because of the acuity of their medical, surgical, or psychiatric
condition, or because MRC-based services need to be initiated
within an appropriate time frame.  Holdover housing at a county
jail or Bureau general population institution is not permissible.

c. **Routine Transfer** - A routine transfer is initiated for
medical, surgical, or psychiatric treatment that is not an
emergency and time en-route is not a major factor.  Routine
transfers may travel by any available means.

d. **Procedures for Initiating Emergency, Routine/Urgent, and
Routine Transfer Requests**.  All transfer requests for medical,
surgical, or psychiatric designations will be initiated via
GroupWise on the Medical/Surgical and Psychiatric Referral
Request Form (BP-770) available on SALLYPORT.  The HSA, with
input from the Clinical Director and other providers involved
with the inmate's care (e.g., mid-level providers, psychologists,
consultant physicians), is responsible for completing the BP-770.
The referring institution Warden must review the BP-770 and
authorize the request for transfer.

The BP-770 serves as the redesignation, transportation, and
security worksheet from which the actual redesignation is made.
It will also serve as the emergency referral request form,
documentation of the inmate's condition and the reason for
transfer.  Accordingly, it is essential that the BP-770 be
completed thoroughly and accurately.

The Medical Designator will review each request for redesignation and approve or deny the requested transfer. Based on clinical information and in consultation with the Medical Director, the Medical Designator may change the urgency level of the request.

OMDT will authorize CIM clearance (if appropriate) and enter approved transfers to an appropriate BOP facility in SENTRY on the "Enter Redesignation" screen.

e. **Completion of Treatment** - All requests for redesignation to the parent facility upon completion of Medical/Surgical or Psychiatric treatment, or to another medical facility for continuation of treatment, will be initiated by the facility currently housing the inmate via GroupWise on the Discharge Transfer Summary form. This form serves as the designation, transportation, and security worksheet from which the redesignation is made.

Medical cases are normally returned to their parent facility unless the DSCC approves a change in the parent facility based on clinical justification provided prior to redesignation by the Medical Designator.

7. **TEMPORARY TRANSFERS**. It is sometimes necessary to temporarily transfer an inmate to a contract facility or other Bureau institution. This is normally for security reasons, when the current institution does not have a Special Housing Unit. In such cases, institution staff will forward a request for temporary transfer approval from the Warden to the DSCC. The request will include the rationale for transfer, with assurance that the receiving facility is in agreement with the temporary transfer. Transfer approval must be obtained prior to the transfer during normal working hours, or if after hours, the next work day. A copy of this request will be routed to the appropriate CCM office, if the transfer is to a contract facility.

8. **TRANSFERS FOR TRAINING PURPOSES OR PROGRAM PARTICIPATION**. An inmate is ordinarily only transferred for specialized national programs not offered at the parent facility to include:

    (a)  Residential Drug Treatment Program;
    (b)  Life Connections Program;
    (c)  Special Management Unit; and
    (d)  Sex Offender Programs.

When placement for program participation is inconsistent with the assigned security level, the appropriate Management Variable must be applied by the DSCC. Ordinarily, the inmate will be returned

to the referring institution upon completion of the specialized
training or program if the inmate has 18 months or more remaining
until the inmate's release date at the time of the transfer.
Further, if the program facility is nearer to the inmate's
release residence, than is the referring institution, the inmate
may remain at the program facility.

9.    **INSTITUTION HEARING PROGRAM TRANSFERS.**  The Institution
Hearing Program (IHP) is a coordinated effort by the Bureau, ICE,
and the EOIR to provide deportation or exclusion proceedings to
sentenced aliens as expeditiously as possible after the date of
conviction.  Eligibility, designation, classification, and
transfer procedures are specifically outlined in Bureau
directives.  IHP sites have been established for male and female
non-U.S. citizens who are serving federal sentences to ensure a
deportation or exclusion hearing is conducted early in their
sentence instead of at the end of their sentence.

10.   **TRANSFERS TO SATELLITE CAMPS.**  The Warden of an institution
with a satellite camp may transfer an inmate from the main
institution to the camp if the inmate is assigned an appropriate
security and/or custody level. The Camp Administrator of a
satellite camp adjacent to a Low or Medium security level
institution may temporarily transfer the inmate to the main
institution for disciplinary purposes (i.e., disciplinary
segregation).  If a need for an immediate redesignation arises,
the inmate may be placed as a holdover in Administrative
Detention at the main institution while approval is sought from
the DSCC for redesignation to that institution or another
institution.

An inmate may travel via "unescorted transfer" from a low or
minimum security level institution to a minimum security level
institution if the inmate is a minimum security level inmate and
has OUT or COMMUNITY custody.  The inmate's family (on the
approved visiting list) may provide transportation to the
receiving institution only if the inmate is transferring from a
minimum security level institution to another minimum security
level institution, and if approved by the Warden.  The inmate's
family is expected to bear all transportation costs.  The inmate
must go directly from the sending institution to the receiving
institution.

   The Warden may authorize clearance for the transfer of a CIM
Case, with the exception of WITSEC cases, to the satellite camp
of the parent facility provided established regulations for
regular transfer authority have been met. (Refer to the CIM
Manual for more specific details).

11.  **PRE-RELEASE TRANSFERS**.  Inmates in federal and contract institutions may be transferred to CCCs in accordance with the Program Statement Community Corrections Center (CCC) Utilization and Transfer Procedure.  Inmates who have been approved for CCC referral and are otherwise appropriate for camp placement are to be transferred to a camp for intermediate placement if at all practicable.  Inmates should be encouraged to complete all or most of the Institution Release Preparation Program at the parent institution prior to transfer.

The parent institution is to complete the CCC referral packet and the camp should be closer to the inmate's release residence. This process should be completed to allow the inmate a minimum of a 60-day placement at the camp prior to the reporting date at the CCC.  CCC referrals may be made 12 to 18 months in advance of an anticipated reporting date with the concurrence of local CCM offices.  A notation that the CCC referral was made with a specific projected placement date should be included in the request for institution transfer, and the transfer request should be prepared at the same time as the CCC referral.

12.  **TRANSFERS FROM CCC'S**.  When an inmate fails to meet the conditions of CCC placement, the CCM should designate the inmate to the parent institution with consideration given to the following criteria for designation:

    (a)  local manday detention rates;
    (b)  availability of Bureau Detention Centers;
    (c)  budgetary constraints;
    (d)  projected release date; and,
    (e)  distance to parent facility.

When returning the inmate to the parent institution is not cost effective, the Community Corrections Office will refer the case to the DSCC for designation.  DSCC staff, will make the designation, and should consider the closest institution commensurate with the inmate's security needs.  When the DSCC designates the inmate to a facility, DSCC staff will notify the parent institution to facilitate the forwarding of the central file.

13.  **LONG-TERM DETAINEES**.  The authority for the redesignation of long-term detainees rests with the Detention Services Branch, Correctional Programs Division, Central Office.  Refer to the current Program Statement Mariel Cuban Detainees for transfer procedures.  Transfers for medical or mental health treatment however, shall be referred to the Central Office Medical Designator.  Mariel Cubans who are sentenced, and therefore not detainees, are handled in a routine fashion by DSCC staff.

14.  **IN-TRANSIT DATA FORM**

a.  Upon notice that an inmate is being transferred or
temporarily released to an authorized law enforcement officer
(e.g., U.S. Marshal, state law enforcement officer, or Bureau bus
officer), the Unit Manager will ensure the following:

- The top portion of the SENTRY automated In-Transit Data
  Form is accurate and the bottom portion is completed;

- CIM, YCA, DCYRA and any other important information is
  included in the space for "Non-Routine Security Needs;"

- CIM separation information is accurate, up-to-date and
  the SENTRY generated "CIM Clearance and Separatee Data"
  is attached to the In-Transit Data Form; and,

- The In-Transit Data Form is signed, dated, and
  forwarded to ISM staff who will attach a current inmate
  photograph and provide the form to the transporting
  officer.

**NOTE:**     The most recent In-Transit Data Form is maintained in
the Inmate Central File.  The "CIM Clearance and
Separatee Data" display will not be filed with the
In-Transit Data Form.

b.  Upon receipt of the In-Transit Data Form, ISM staff will
ensure the following:

- The information indicated on the top portion of the
  form is correct.  SENTRY update functions should be
  executed in the event that the data is not accurate;

- The Sentencing Remarks should include the offenses and
  the length of sentence as noted on the Judgment.  If
  this information is not accurate, the load data should
  be updated;

- The Detainer Remarks should indicate all active
  detainers and the charge or offense.  If the detainer
  has been litigated, information regarding the sentence
  imposed or time remaining to serve should be listed.
  If this information is not current, the commitment
  should be updated; and,

- Initials are placed below the detainer remarks
  indicating that the information has been confirmed and
  is accurate and up-to-date.

15.  **TRANSFER CODES**. The reason for transfer, as shown by one of the codes listed at the end of this chapter, must be provided in the top portion of the Transfer Order.  If there is more than one reason for transfer, the most pertinent code should be used. Note that all Unescorted Transfers are Discharge Code - FURL TRANS for Furlough Transfer.

16.  **SPECIAL REQUIREMENTS**

a.  An inmate having a detainer or pending charge may be transferred to any institution for which he or she properly classifies; however, generally when there is a formally filed detainer, the inmate is not to be transferred to an institution more distant from the detaining authority unless there is substantial reason to believe the detainer will be dropped or the pending charge will not be prosecuted.

An inmate who indicates an intention to oppose extradition is not to be transferred within the last 30 calendar days prior to release to an institution in the state that placed the detainer. Such cases, and others in which there are legal or jurisdictional problems, are to be referred to the Regional Correctional Programs  Administrator (See Program Statement Inmate Systems Management Manual.

b.  When there is reason to transfer an inmate to a non-federal institution for concurrent service of federal and state sentences, the Warden will refer the case to the DSCC Administrator.  Refer to the Program Statement, Transfer of a Prisoner to State Custody Prior to Release from the Federal Sentence, for procedures.

17.  **RELATIONSHIPS WITH OTHER AGENCIES**

a.  **U.S. Parole Commission.**  Parolable inmates must be housed at a parolable institution in accordance with their parole hearing requirements unless a hearing is no longer required.

b.  **Administrative Office of the U.S. Courts.**  The court of conviction may recommend to the Attorney General or the Bureau that the defendant be retained at, or transferred to, a place of confinement near the place of trial or the court of appeals, for a period reasonably necessary to permit the defendant to assist in the preparation of his or her appeal.  Upon receiving this recommendation, the Bureau will make every effort to place the inmate in such a facility.  If a reason exists for not placing the inmate in that facility, the court must be notified of the situation and an attempt will be made to arrive at an acceptable place of confinement.

Ordinarily, complicated jurisdictional or legal problems should
be resolved before transfer.  Ordinarily, the sending Case
Management Coordinator will determine if an inmate has legal
action pending in the district in which confined.  If so, the
individual should not be transferred without prior consultation
with the appropriate U.S. Attorney or Regional Counsel, or both.
Under Rule 23(a) of the Federal Rules of Appellate Procedures, an
inmate may not be transferred, pending review of a Habeas Corpus
proceeding commenced before a court, without the approval of the
court.  Approval for transfer should be sought through the U.S.
Attorney or Regional Counsel in cases where a Habeas Corpus
petition is pending.

   c.  **Non-Federal Authorities**.  The decision to accept a state
prisoner in the Bureau is the responsibility of the DSCC
Administrator.  When notifying the state authority of acceptance,
the state's contract code will be identified.

   The Office of Procurement, Central Office is responsible for
negotiating contracts for housing state prisoners.  If it is
necessary to transfer a federal inmate to a local jail, the
sending institution must immediately notify the U.S. Marshals and
the CCM, preferably prior to the transfer.

   d.  **Military Inmates**.  The DSCC will accept a military or Coast
Guard inmate recommended for transfer to federal custody if,
after examination of all available information, the Bureau
can provide appropriate resources for the inmate's needs.  The
DSCC will be responsible for the designation and redesignation of
all military and Coast Guard inmates accepted for service of
their sentence in Bureau custody.

   In some cases, special agreements or Memoranda of Understanding
(MOU) have been established with various military branches.
These MOUs give direction to Bureau staff regarding which Bureau
regulations and policies apply to the military inmates.  Pursuant
to 10 U.S.C. § 858, staff should be aware that military or Coast
Guard inmates confined in Bureau institutions are subject to the
same discipline and treatment as other inmates in those
institutions.

   Additionally, the Bureau will accept the sentence computation
provided by the military or Coast Guard authorities with the
exception that the Bureau will release such inmates, if not
paroled, under the provisions of 18 U.S.C. § 4164 provided they
have accrued good time deductions in excess of 180 days.  DSCC
staff will refer to the appropriate military or Coast Guard
authorities for resolution of suspected sentence computation
errors or discrepancies, or challenges to the sentence
computation by the inmate or his or her representative, or both.

Once a military inmate comes into Bureau custody, all
notifications and requirements apply as if he or she were a
Bureau inmate, i.e., VWP notification, VCCLEA notification, Sex
Offender Notification, and IFRP requirements.  Notification to
the military is also required at least 30 days prior to the
inmate's release.

18.  **STATE PLACEMENT**.  Inmates who have exhausted available
resources within the Bureau, should be referred for placement in
an appropriate non-federal facility under contract with the
Bureau.  Preparation of a transfer referral to merely "exhaust"
all BOP resources is not required when the inmate is clearly not
appropriate for any facility within the Bureau.

   a.  **Placement Procedures**.  The Warden will prepare a memorandum
to the DSCC Administrator outlining the reasons for state
placement of a federal inmate.  This memorandum will be forwarded
along with supporting documentation and classification material
that will, at a minimum, include the following:

      (1) Presentence Investigation Report;

      (2) Two copies of the Judgment;

      (3) Relevant SENTRY data;

      (4) Current Progress Report; and,

      (5) Any Disciplinary or SIS Reports.

   If the DSCC Administrator approves an inmate for state
placement, DSCC staff will select a state correctional system for
referral.  The system selected will be based on the type of
facilities within the system; available bed space; court status
(state systems that are under injunction because of overcrowding
or violations of inmates' civil rights will not be used), and the
state's willingness to accept federal boarders.  Once a suitable
state correctional system has been identified, DSCC staff will
forward the transfer packet to the appropriate Community
Corrections Regional Administrator, overseeing the state in which
the DSCC Administrator has identified for possible placement.
DSCC staff may make up to two referrals per inmate at a time, and
continue this process until an appropriate placement is secured.
The CCRA will work through the local CCM office which will refer
the case for state placement.  The CCM office will advise the
CCRA of the response from the state authority/Department of
Corrections.  If approved for placement, the CCRA will initiate
SENTRY redesignation procedures, and forward the inmate file to
the CCM office.  If not approved for placement the CCRA will

advise the DSCC Administrator, who will continue to secure a
suitable state placement.

The CCM office with state monitoring authority in which the
inmate is eventually housed assumes full responsibility for the
inmate, including biennial reviews and subsequent transfer
authority.  State placement materials containing, at a minimum, a
Progress Report, Presentence Investigation Report, and all
memoranda pertaining to the state placement, will be forwarded to
and maintained by the CCM office after the inmate has been
approved for placement.

If an inmate is approved for permanent return to the Bureau,
the place of confinement will be determined by the DSCC.  If an
inmate is returned to the Bureau for medical treatment, the
inmate will be returned to the state when the medical treatment
is completed.  Occasionally, returning the inmate to the
originating state may not be appropriate.  In such cases, the
DSCC will obtain a new place of incarceration for the inmate,
after consultation with the Office of Medical Designation and
Transportation.

b.  **Post-Placement Monitoring**.  After a federal inmate has been
placed in a state contract facility, the appropriate CCM will
review the case every two years beginning from the date of the
inmate's arrival to determine whether the inmate is still
appropriate for state placement.  The CCM's cover memorandum
containing a recommendation and a Progress Report provided by the
state contract facility will be forwarded to DSCC staff who will
make a determination for continued state placement or return to
Bureau custody.

If the inmate requires continued placement in that state
facility, DSCC staff will enter a notation on the SENTRY "CIM
Clearance and Separatee Data" screen indicating such.  However,
if state placement is no longer necessary, the inmate will be
redesignated to Bureau custody by the DSCC.

Inmates serving a sentence of Death will also be reviewed for
continued state placement.  Information received from Community
Corrections staff during the review of the contract may be used
to make a determination for continued state placement.

The DSCC is responsible for monitoring and tracking state
placement requests received from BOP institutions.  The CCRA will
prepare a quarterly report (statistical/narrative) which will be
forwarded to the DSCC Administrator.

19.  **SECONDARY DESIGNATION**.  Upon initial designation, an inmate
may be designated specifically for a parole hearing or program
participation, and as a result, may require a secondary
designation upon completion of the activity.  If upon completion
of the activity, staff determine that the secondary designation
is no longer appropriate, the DSCC will be notified for
reconsideration.  Otherwise, when the conditions of the initial
designation are met, institution staff will prepare a Transfer
Order for signature of the sending institution Warden and
arrangements will be made for movement of the inmate through
routine procedures.

A secondary designation will not normally be made for cases
designated for medical or psychiatric treatment.  The medical
center or reviewing institution will notify the Medical
Designator upon completion of evaluation or treatment.  Approval
will be given for a secondary designation at that time.  This
approval will be based on medical requirements of the inmate and
resources of the secondary designation.

20.  **POPULATION MANAGEMENT**.  The Assistant Director, Correctional
Programs Division periodically reviews each institution's Rated
and Designation Capacities.  Occasionally, it is necessary to
impose a moratorium or population cap on a particular institution
to avoid or reduce overcrowding.  The Assistant Director,
Correctional Programs Division, with the approval of the
Population Management Subcommittee of the Executive Staff, may
impose a moratorium on other facilities including the Medical
Referral Center general population units.  The Assistant
Director, Health Services Division, with the approval of the
Population Management Subcommittee of the Executive Staff, may
authorize a moratorium or population cap for Medical Referral
Centers (excluding general population).

   a.  Referral Procedures

      (1) The Warden of the institution recommends to the Regional
Director that a moratorium or population cap be established.

      (2) The Regional Director reviews the request, and if in
agreement, contacts the Assistant Director, Correctional Programs
Division, or the Assistant Director, Health Services Division,
and either requests a population cap or total moratorium.

A population cap places a ceiling on the number of inmates that
can be designated to a facility.  A total moratorium is defined
as a complete cessation of all initial designations and
redesignations to an institution or DFCL assignment.

In extreme circumstances, the Assistant Director, Correctional Programs or Health Services Division with concurrence of the Subcommittee may direct that inmates en route to a facility be redesignated.  When a moratorium or population cap is imposed, a termination date will be established.  The cap or moratorium will be terminated on that date unless the Regional Director contacts the appropriate Assistant Director, Correctional Programs or Health Services Division, and obtains an extension.

(3) The appropriate Assistant Director will issue a GroupWise e-mail notifying the DSCC Administrator and Chief Executive Officers of the cap or moratorium.

21.  **INSTITUTIONS WITH SPECIAL MISSIONS**

a.  **FCI Oakdale.**  The Bureau, ICE, and the Executive Office for Immigration Review (EOIR) work closely together to meet the requirements of the Immigration Reform and Control Act of 1986, by ensuring the expeditious review of criminal aliens for deportation.  Beds are available for federally sentenced aliens, who are subject to administrative proceedings under the Immigration and Naturalization Act.  Such inmates are transferred to FCI Oakdale for disposition of their ICE detainer prior to completion of their federal sentence.

Mexican and Cuban nationals are not eligible for the Oakdale Criminal Alien Program.  The following procedures apply for the actual selection and designation of inmates to the Oakdale Criminal Alien Program.

(1)  The ICE Officer in Charge at FCI Oakdale will monitor the inmate male population via SENTRY to identify criminal aliens appropriate for the program at FCI Oakdale.  After they have been identified, ICE staff will place a detainer on these individuals through the DSCC.  Each week DSCC staff will compile a list of the criminal aliens who are to be released within the next year. A courtesy list will be submitted, via GroupWise, to FCI Oakdale for monitoring purposes.

(2)  ICE staff at FCI Oakdale will forward to DSCC staff information on alien inmates via GroupWise to assist in the movement of inmates to FCI Oakdale at a later date.  The movement of inmates to FCI Oakdale will be authorized and coordinated by the DSCC.  DSCC staff will ensure CIM clearance is obtained and the Custody Classification form reflects appropriate use of any Management Variable.

(3)  Inmates will be redesignated no later than seven months from a firm projected release date.  Once approved for transfer,

institution and transportation staff will immediately schedule
the inmate for movement to FCI Oakdale.  Institution staff will
notify the Oakdale CMC if the inmate is not en route within 15
working days of the transfer approval.  The central file should
contain a current Progress Report and all pertinent case
management activities should be completed prior to transfer
including fines and the ordering of parole certificates, when
applicable, or preparation of other release documents as
required.

    (4)  ISM staff will ensure any other detainers lodged against
those inmates approved for transfer are resolved and the
detaining authority notified before the inmate is transferred to
FCI Oakdale.

    (5)  Because of unforeseen circumstances, some criminal
aliens may be inappropriate for transfer to FCI Oakdale.  ICE
staff at FCI Oakdale will notify DSCC staff when this occurs and
will advise of any additional action necessary to coordinate the
resolution of the inmate's citizenship/release status.
Conversely, institution staff are to contact DSCC staff if they
believe a transfer should not occur.  If the transfer is deemed
inappropriate, DSCC staff will delete the Oakdale "DST" transfer
approval.

    (6)  The Detention Services Branch, Correctional Programs
Division, Central Office will assist with coordination of the
Oakdale Criminal Alien Program and will act as the primary
liaison with ICE and EOIR Headquarters on matters of mutual
interest affecting the program's development and/or modification.
Any questions regarding these matters should be directed to that
office.

  b.  **USP Marion/ADX Florence**.  USP Marion/ADX Florence general
population units are designed for male inmates who have
demonstrated an inability to function in a less restrictive
environment without being a threat to others, or to the secure
and orderly operation of the institution.

    (1)  **Referral Procedures and Criteria**.  Prior to referring
an inmate to USP Marion or ADX Florence, redesignation to another
high security institution should be considered first.  If
transfer to another institution is not appropriate, Wardens will
refer the proposed USP Marion or ADX Florence case to North
Central Regional Director.  The North Central Region will
designate the inmate as appropriate.

  Assignment to USP Marion or ADX Florence will ordinarily be
made without regard for such factors as release destination or

program needs, such as education and vocational training.  Prior
to transfer to USP Marion or ADX Florence, staff at the sending
institution will ensure that the inmate is assigned Maximum
custody.  While in transit to USP Marion or ADX Florence, inmates
will be housed and provided visiting, correspondence, and
telephone privileges as if confined at USP Marion or ADX
Florence.

   Inmates currently diagnosed as suffering from serious
psychiatric illnesses should not be referred for placement at
either USP Marion or ADX Florence.

   (2)  **Referral Packet for USP Marion or ADX Florence.**  The
referral packet for either USP Marion or ADX Florence general
population will include the following items:

      (a)  A memorandum from the Warden to the North Central
Regional Director with the specific rationale supporting the
institution's recommendation;

      (b)  Copies of all disciplinary reports, investigative
materials or other official documentation related to the behavior
prompting the referral;

      (c)  A current Progress Report;

      (d)  A copy of the inmate's latest Presentence
Investigation Report; and,

      (e)  A recent psychiatric or mental health evaluation.

   Inmates with severe or chronic behavior patterns that cannot
be addressed in any other Bureau institution should be referred
to ADX Florence general population, and those who are somewhat
less problematic should be referred to USP Marion.  In describing
the reasons underlying the referral, the Warden should explain
why he or she has selected USP Marion or ADX Florence,
respectively.

   (3)  **Acceptance or Rejection of Referrals.**  The North
Central Regional Director has final review authority for
referrals to the USP Marion and ADX Florence general population
units.  In some cases, the Regional Director may approve
placement at USP Marion when a referral has been submitted for
ADX Florence and vice versa.

   A response to a recommendation for USP Marion or ADX
Florence placement will ordinarily be made by the North Central
Regional Director within 60 calendar days after receiving the

referral packet from the referring institution.  Approval or
denial will be noted in SENTRY on the inmate's "CIM Clearance and
Separatee Data" screen, with a brief memorandum from the North
Central Regional Director to the requesting Warden to follow.

(4)  **Transfer from USP Marion or ADX Florence.**  Once an
inmate successfully completes the USP Marion or ADX Florence
program, the Warden will submit a transfer request to the North
Central Regional Director.  Upon the North Central Regional
Director's approval the request will be forwarded to the DSCC for
determination of an appropriate facility.  Inmates will
ordinarily be transferred from USP Marion or ADX Florence using
Code 308 – Lesser Security.  Ordinarily, inmates completing the
ADX Florence program will be transferred to a High Security
facility, other than USP Marion.

(5)  **USP Marion Failures.**  Inmates who continue to exhibit
disruptive misconduct at USP Marion may be considered for
referral to ADX Florence general population or the Control Unit.

c.  **FMC Carswell Administrative Unit**

(1)  **Initial Designations.**  Initial designations may only
occur in extraordinary situations by DSCC staff.

(2)  **Redesignation Criteria.**  The FMC Carswell
Administrative Unit is designed to house females exhibiting any
of the following:

- A history of escape or attempted escape from a secure
  institution;

- Demonstrated repeated incidents of assaultive or
  predatory behavior;

- Demonstrated chronic behavior problems; and/or

- Special management concerns.

(3)  **Referral** for transfer to the FMC Carswell
Administrative Unit will be submitted via the Request for
Transfer/Application of Management Variable (409) to the DSCC
Administrator.

(4)  **Acceptance or Rejection of Referrals.**  The DSCC
Administrator has final review authority for referrals to FMC
Carswell Administrative Unit.

| TRANSFER CODES | |
|---|---|
| CODE | DESCRIPTION |
| 276 | **FURLOUGH TRANSFER:** Unescorted furlough transfer to a CCC. |
| 307 | **INSTITUTION CLASSIFICATION:** Transfer to an institution with greater security (e.g., Low to Medium). |
| 308 | **INSTITUTION CLASSIFICATION:** Transfer to an institution with less security (e.g., High to Medium). |
| 309 | **DISCIPLINARY:** Transfer as a result of an act(s) of misconduct related to documented poor institutional adjustment.  See Program Statement on Discipline and Special Housing Unit. |
| 313 | **NEARER RELEASE:** Transfer for the purpose of placing an inmate in an institution nearer the release destination or to facilitate the release process. |
| 314 | **TRAINING PURPOSES:** Discontinued (Use Code 324). |
| 315 | **TRAINING COMPLETED:** Discontinued (Use Code 325). |
| 316 | **TEMPORARY TRANSFER:** Transfer to the custody of U.S. Marshals or local authority. |
| 317 | **RELIEVE OVERCROWDING:** Transfer to relieve overcrowding at a facility. |
| 318 | **INCREASE POPULATION:** Transfer to build a population, usually upon activation of a new facility. |
| 319 | **DRUG ABUSE PROGRAM:** Transfer to participate in a specialized Drug Abuse Program. |
| 320 | **WORK/STUDY RELEASE: Discontinued.** |
| 321 | **TRANSFER TO CONTROL UNIT:** Transfer to Control Unit (see Chapter 7, Section 4). |
| 322 | **TRANSFER FROM CONTROL UNIT:** Transfer from Control Unit (See Chapter 7, Section 4). |
| 323 | **CLOSE SUPERVISION CASE:** Transfer as a result of an investigation that indicates a safety, security, or escape risk.  Includes verified and unverified protection cases. |
| 324 | **PROGRAM PARTICIPATION:** Transfer for a parole hearing or to participate in a specialized program. |
| 325 | **PROGRAM COMPLETED/WITHDRAWAL/REMOVAL:** Return to the original institution following the completion, withdrawal, or removal from a specialized program. |
| 326 | **CONCURRENT SERVICE IN NON-FEDERAL FACILITY:** Transfer to non-federal facility (excluding CCC) for service of concurrent federal and state sentences. |
| 327 | **BOARDING IN NON-FEDERAL FACILITY:** Transfer to non-federal facility (excluding CCC) for service of federal sentences only. |